IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

|  |  |
|---|---|
| WILDEARTH GUARDIANS,<br><br>Plaintiff,<br><br>vs.<br><br>CRAIG HOOVER; DANIEL ASHE; UNITED STATES FISH AND WILDLIFE SERVICE; SALLY JEWELL; AND THE UNITED STATES DEPARTMENT OF THE INTERIOR,<br><br>Defendants. | CV 16–65–M–DWM<br><br>OPINION<br>and ORDER |

Plaintiff WildEarth Guardians ("WildEarth") seeks declaratory and injunctive relief against Defendants Craig Hoover, Daniel Ashe, United States Fish and Wildlife Service, Sally Jewell, and the United States Department of the Interior (collectively "the Service") on the grounds that they failed to comply with environmental and regulatory procedures in the administration and implementation of a federal export program that allows certain animal pelts and parts to be exported from the United States pursuant to the Convention on International Trade in Endangered Species ("CITES"). The Service argues that WildEarth lacks

1

standing and seeks to dismiss the Amended Complaint, (Doc. 9).[1] (Doc. 27.) The Service's motion is denied.

## BACKGROUND

CITES is a multilateral treaty that aims to protect wildlife by regulating trade in certain species that are vulnerable to, or adversely affected by, trade. 27 U.S.T. 1087 (March 3, 1973). The export of pelts and other parts of certain furbearing animals, including bobcats, Canada lynx, gray wolves, brown bears, and river otters, is regulated under Appendix II of the treaty. *Id.*; 50 C.F.R. § 23.91. A CITES export permit or certificate is therefore required for the exportation of pelts or other parts of those furbearing animals. The Service has promulgated regulations to implement CITES that prohibit the import or export of any CITES-listed animals unless expressly authorized by valid documents or specifically exempted from documentation requirements. *See* 50 C.F.R. pt. 23.

Pursuant to these regulations, anyone seeking to export pelts or parts of furbearing species listed in Appendix II must acquire tags and permits either directly from the Service's Division of Management Authority or from a state or

---

[1] A motion to dismiss was initially filed on July 11, 2016. (*See* Doc. 5.) WildEarth subsequently filed its Amended Complaint, (Doc. 9), however, and the Service filed the present motion to address the amended pleading. On August 3, 2016, the Montana and National Trappers Associations intervened, (Doc. 21), and join in the present motion, (Doc. 28).

tribe approved to distribute tags and/or permits. In the second instance, interested states and tribes can apply to the Division of Management Authority, and if approved, the Service provides the tags and permits to the states and tribes for distribution to trappers, hunters, or other individuals. In this process, a state or tribe must provide sufficient information for the Service to determine that its management program and harvest controls are appropriate to ensure that CITES furbearers harvested within its jurisdiction are legally acquired and that export will not be detrimental to the survival of the species in the wild. *See* 50 C.F.R. § 23.61; (Doc. 9 at ¶ 20.) If the state or tribe is approved for CITES export authority, the Division of Management Authority supplies the state or tribe with serially unique CITES export tags specific to the state or tribe. (Doc. 9 at ¶ 21.) These states and tribes must, in turn, require that specimens of the species for which they have export program approval are tagged with these serially unique, non-reusable tags as evidence of legal acquisition. (*Id.*) Montana is one of the states approved for distribution of export tags and permits for Appendix II species, including bobcats and gray wolves. (*Id.* at ¶ 22.)

WildEarth alleges that the Service's CITES export program for Appendix II furbearers is a major federal action that significantly affects the human environment and that, as such, the Service violated the National Environmental

3

Policy Act ("NEPA") when it failed to prepare an Environmental Assessment or Environmental Impact Statement in conjunction with the program. The Service insists that WildEarth lacks standing because while exporting furbearer pelts and other parts requires a CITES tag and permit, the trapping and hunting of furbearers is authorized and controlled by states, including Montana, under state law.

**LEGAL STANDARD**

A party may seek dismissal of an action for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Under Article III of the United States Constitution, a court has subject matter jurisdiction only if the party bringing the action has standing. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). To have standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, ___ U.S. ___, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan*, 504 U.S. 555, 560-61 (1992)). The plaintiff, as the party seeking to invoke the court's jurisdiction, bears the burden of establishing subject matter jurisdiction. *Lujan*, 504 U.S. at 561. "Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element," *Spokeo, Inc.*, 136 S. Ct. at 1547 (quotation marks and alteration omitted), but courts "presume that

general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (internal quotation marks and alteration omitted).

## ANALYSIS

WildEarth's showing of injury in fact, the causal connection between its alleged injury and the Service, and the redressability of its claim should it succeed on the merits meets the requirements of Article III standing.

### A. Injury in Fact

The Service first argues that WildEarth fails to show injury in fact. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc.*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560). "[T]he desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for the purpose of standing." *Lujan*, 504 U.S. at 562-63. But, "[f]or an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo, Inc.*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560 n.1). For an injury to be "concrete," "it must actually exist" in that it must be "real, and not abstract." *Id.* (internal quotation marks omitted). "[I]ntangible injuries can nevertheless be concrete," but a plaintiff cannot "allege a bare procedural

5

violation[] divorced from any concrete harm." *Id.* at 1549; *see Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing.").

Here, WildEarth alleges its members "have, among other interests, aesthetic, professional, recreational, personal, and spiritual interest in bobcats, wolves, and other non-target animals." (Doc. 9 at ¶ 6.) It also alleges that its members live near and plan to visit areas that provide furbearer habitat, and

> are affected by trapping and other capture methods in Montana and other states that harm or reduce the numbers of bobcats, gray wolves, and other non-target animals in these areas, and make it less likely that they will: see these animals, see evidence of these animals; enjoy looking for these animal and evidence of these animals; or experience habitat in which these animals live.

(*Id.*) The Service argues that the alleged injury is not sufficient because the Amended Complaint does not identify individual members of WildEarth with concrete plans to view or experience furbearers in any area, much less Montana. However, in addition to the allegations in the Amended Complaint, WildEarth has filed declarations of three members who have a specific interest in the furbearing species at issue. (*See* Decl. Bishop, Doc. 30-1 at ¶¶ 11-13 (indicating regular recreation in areas around Bozeman and that he enjoys looking for and seeing

signs of wildlife)); (Decl. Peck, Doc. 30-2 at ¶¶ 7-8 (indicating regular recreation in Flathead/Glacier area and plans to do so in the future)); (Decl. Nokes, Doc. 30-3 at ¶¶ 8-11 (indicating regular recreation in the Missoula area).) These affidavits aid in establishing injury in fact. *See Seattle Audubon Soc'y v. Espy*, 998 F.2d 699, 703 (9th Cir. 1993) (plaintiffs' challenge regarding owls sufficient where "supported by declarations from its members describing *inter alia* their proximity to owl-inhabited forests, the frequency with which they visit these forests, and their aesthetic and scientific interest in the owl"); *Defenders of Wildlife v. Hall*, 807 F. Supp. 2d 972, 981 (D. Mont. 2011) (considering affidavits filed after the complaint in determining identified individuals alleged harm); *see also Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015) ("Where it is relatively clear, rather than merely speculative, that one or more members have been or will be adversely affected by a defendant's action, and where the defendant need not know the identity of a particular member to understand and respond to an organization's claim of injury, [there is] no purpose to be served by requiring an organization to identify by name the member or members injured."

The Amended Complaint and the declarations filed by WildEarth establish that its members visit and enjoy furbearing species in Montana and trapping and/or snaring of bobcats and wolves interferes with those interests. WildEarth has

identified concrete harms flowing from its alleged procedural violation.

B. **Causation**

"A showing of procedural injury lessens a plaintiff's burden on the last two prongs of the Article III standing inquiry, causation and redressibility." *Salmon Spawning & Recovery Alliance v. Gutierrez*, 545 F.3d 1220, 1226 (9th Cir. 2008) (citing *Lujan*, 504 U.S. at 572 n.7). "To show causation, the plaintiff must demonstrate a 'causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *Id.* at 1227 (quoting *Lujan*, 504 U.S. at 560-61).

The Service argues that WildEarth cannot show that the animal export program caused the injuries alleged because it is the states, such as Montana, that authorize the trapping and hunting of furbearers, not the export program administered by the agency. WildEarth argues that its members' harms are causally connected to the Service's administration of the CITES export program "because [the program] creates and maintains incentives for individuals to pursue [the killing of gray wolves and bobcats], and allows them to profit from the exports of pelts and parts." (Doc. 30 at 17.) WildEarth's Amended Complaint asserts that its members "have been and continue to be adversely affected by the

Service's actions and/or inactions as described in this pleading, because they have resulted in and continue to result in death, harm, and injury to targeted bobcats and gray wolves, and other animals that are not targeted." (Doc. 9 at ¶ 6.) WildEarth emphasizes, correctly, that bobcat and wolf pelts and parts cannot be exported without the agency's approval and that intervention by the trapping organizations shows a financial interest in the regulation of such exports.

Moreover, pursuant to the governing regulations for CITES, the Service must determine whether granting a permit to a particular entity would be detrimental to the survival of the species. *See* 50 C.F.R. § 23.61. As a result, the numbers and methods of trapping are not wholly outside the Service's control. *See WildEarth Guardians v. U.S. Dep't of Agric.*, 795 F.3d 1148, 1157 (9th Cir. 2015) ("So long as [a] defendant is at least partially causing the alleged injury, a plaintiff may sue that defendant, even if the defendant is just one of multiple causes of the plaintiff's injury."); *Barnum Timber Co. v. U.S. E.P.A.*, 633 F.3d 894, 898-99 (9th Cir. 2011) (finding standing where landowner challenging California's list of impaired waterbodies under the Clean Water Act sufficiently plead causality related to the devaluation of land under the decision). WildEarth has sufficiently established causation to meet the requirements of standing "at this early stage of the proceeding." *Barnum Timber Co.*, 633 F.3d at 899.

C.  **Redressability**

Determining redressability "requires an analysis of whether the court has the power to right or to prevent the claimed injury." *Gonzales v. Gorsuch*, 688 F.2d 1263, 1267 (9th Cir. 1982). "Plaintiffs alleging procedural injury can often establish redressibility with little difficulty, because they need to show only that the relief requested—that the agency follow the correct procedures—may influence the agency's ultimate decision of whether to take or refrain from taking a certain action." *Spawning & Recovery Alliance*, 545 F.3d at 1226-27. WildEarth need only show "that [it] ha[s] a procedural right that, if exercised, *could* protect their concrete interests." *Id.* at 1226. It has done so here.

If WildEarth successfully shows that the Service's determination that the CITES export program for Appendix II species is categorically excluded from NEPA review was arbitrary or capricious, this Court has the power under the Administrative Procedure Act to grant the declaratory and injunctive relief WildEarth requests. 5 U.S.C. § 706(2)(A). And, if the Service is required to perform NEPA analysis in conjunction with its administration of the CITES program, it will be required to consider the impact the program has on the species and the environment, addressing WildEarth members' harms. If WildEarth is successful on the merits it is not "merely speculative . . . that the injury will be

redressed." *Barnum Timber Co.*, 633 F.3d at 899.

## CONCLUSION

Accordingly, IT IS ORDERED that the Service's motion to dismiss (Doc. 27) is DENIED.

DATED this 14th day of November, 2016.

```
_____
DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT
```