Sarah McMillan
WildEarth Guardians
P.O. Box 7516
Missoula, Montana 59807
Tel: 406-549-3895
smcmillan@wildearthguardians.org

Matthew K. Bishop
Western Environmental Law Center
103 Reeder's Alley
Helena, Montana 59603
Tel: 406-324-8011
bishop@westernlaw.org

Peter M.K. Frost, *pro hac vice*
Western Environmental Law Center
1216 Lincoln Street
Eugene, Oregon 97401
Tel: 541-359-3238
frost@westernlaw.org

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| WILDEARTH GUARDIANS, | CV 16-65-M-DWM |
| Plaintiff, | PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR LEAVE TO FILE SUPPLEMENTAL AND AMENDED COMPLAINT |
| vs. | |
| CRAIG HOOVER et al., | |
| Defendants, | |
| MONTANA TRAPPERS ASSOCIATION, et al., | |
| Defendant-Intervenors. | |

Guardians hereby respectfully files this brief in support of its motion to file a supplemental and amended complaint. *See* Order of June 15, 2017 (Doc. No. 55).

**Background**

Guardians filed this case on May 3, 2016, alleging that the Service violated the National Environmental Policy Act ("NEPA") by failing to prepare an analysis to evaluate the environmental effects of its Convention on International Trade in Endangered Species ("CITES") wildlife export program. Doc. No. 1. On July 11, 2016, the Service filed a motion to dismiss, asserting that Guardians lacked standing. Doc. No. 5. On July 18, 2016, Guardians filed an amended complaint. Doc. No. 9. On August 2, 2016, the Montana Trappers Association and National Trappers Association moved to intervene, which the Court granted. Doc. Nos. 19 & 21. On August 13, 2016, the Court denied the motion to dismiss as moot. Doc. No. 13.

On August 5, 2016, the Service filed another motion to dismiss, asserting that Guardians lacked standing. Doc. No. 27. On November 14, 2016, the Court denied the motion to dismiss. Doc. No. 35.

On December 9, 2016, Guardians, the Service, and Montana Trappers Association filed a stipulation requesting that the Court enter an order providing, among other things, that case proceedings would be stayed, and that on or before April 18, 2017, the Service would prepare an analysis under NEPA of the CITES wildlife export program. Doc. No. 39. After ordering the parties to clarify their request, on December 13, 2016, the Court entered an order providing that the Service shall issue an analysis and decision under NEPA on or before April 18, 2017, and that 30 days later, the parties would confer and file a status report that

either requests (a) that the matter be dismissed, (b) the matter proceed with a new schedule and deadlines for filing the administrative record, amending the complaint, and briefing on summary judgment; or (c) other specific relief. Doc. No. 42 at 2-3.

On December 15, 2016, the Fur Information Council of America filed a motion to intervene, which the Court granted. Doc. Nos. 36 & 44.

On March 31, 2017, the Service issued a draft Environmental Assessment ("EA") for its CITES wildlife export program. Frost Decl. ¶ 2. Guardians submitted extensive comments on the draft EA. *Id*. & Exhibits A & B.

After obtaining an extension of time to issue a final NEPA analysis, on May 18, 2017, the Service issued a final EA and Decision Record/Finding of No Significant Impact for the CITES wildlife export program. Plf's Exhibit 2. Among other things, the EA notes that in 2012, the Service consulted under Section 7 of the Endangered Species Act ("ESA"), and issued a Biological Opinion concerning the effects on Canada lynx, which is listed under the ESA as threatened with extinction in the lower 48 states, of the export of bobcat pelts and parts under the CITES wildlife export program. *Id*. at 47. The Biological Opinion is accompanied by an Incidental Take Statement ("ITS"). *Id*. at 47-48. The final EA includes the Biological Opinion and ITS. *Id*. at 66.

On June 14, 2017, the parties filed a joint status report stating, among other things, that Guardians intends to challenge the EA and Decision Record and related documents. Doc. No. 54 at 1. On June 15, 2017, the Court ordered that Guardians shall file a motion for leave to file an amended complaint on or before June 30, 2017, and that the Service and Defendant-Intervenors shall consent to or oppose

the motion fourteen days later. Doc. No. 55.

## Standard of Review

Rule 15(d) provides: "On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." FED. R. CIV. P. 15(d). Rule 15(d) "provides a mechanism for parties to file additional causes of action based on facts that didn't exist when the original complaint was filed." *Eid v. Alaska Airlines, Inc.*, 621 F.3d 858, 874 (9th Cir. 2010). Rule 15(d) provides the Court with broad discretion in allowing a supplemental pleading as a tool of judicial economy and convenience, and its use is therefore favored. *Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988).

Rule 15(a)(2) provides that, after a responsive pleading, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." FED. R. CIV. P. 15(a). The policy of Rule 15(a) favoring revised pleadings is "to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003).

Allowing supplementation and amendment is consistent with the "general purpose of the Rules to minimize technical obstacles to a determination of the controversy on its merits." *United States v. Reiten*, 313 F.2d 673, 674 (9th Cir. 1963). Courts consider the same factors when determining whether to allow supplementation or amendment. *Smith v. City of Berkeley*, No. C 13–4947 PJH 2014 WL 1230692, at *7 (N.D. Cal. March 21, 2014) (citing *Al Haramain Islamic Found., Inc.*, No. 3:07-CV-01155-KI, 2012 WL 6203136, at *8 (D. Or. Dec. 12,

2012)). Leave to supplement or amend should be granted unless the pleading would result in undue prejudice to the opposing party, is the product of bad faith, would cause undue delay in the proceedings, or would be a futile exercise. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (citations omitted).

**Argument**

Guardians' proposal to supplement its pleading to challenge the EA and Decision Record is made pursuant to Rule 15(d), and its proposal to amend its pleading to challenge the Biological Opinion and ITS is made pursuant to Rule 15(a)(2). The Court should exercise its discretion and allow Guardians' revised pleading.

1. Allowing Leave Would Promote Judicial Efficiency.

The EA and Decision Record comprise the Service's first public evaluation of the environmental effects of the CITES wildlife export program under NEPA. Previously, the Service took the position that it could categorically exclude the CITES wildlife export program from NEPA review. *See* Plf's Ex. 2 at 2-3. Now that the Service has prepared an EA and Decision Record, it is appropriate for the Court to allow Guardians to supplement its complaint to challenge the sufficiency of the EA and the legality of the Service's decision to not prepare an Environmental Impact Statement. *See, e.g., Defs. of Wildlife v. U.S. Army Corps of Engineers*, CV-15-14-GF-BMM, 2017 WL 1405732, at *5-6 (D. Mont. Apr. 19, 2017) (allowing plaintiffs to file a supplemental and amended complaint to challenge an EIS and Record of Decision an agency prepared after case was filed and during its pendency).

Moreover, leave to supplement the complaint would promote judicial

efficiency and alleviate the need for Guardians to file an entirely new civil action challenging the EA and Decision Record. This case has been pending for over one year, and the entities that have expressed an interest in defending the CITES wildlife export program are now parties to the case, including state and national trapping organizations. It would promote judicial efficiency to have the four sets of parties participate in cross-motions for summary judgment related to the EA and Decision Record.

The same is true with Guardians' request for leave to amend the complaint to challenge the Biological Opinion and ITS concerning the effects on Canada lynx of the export of bobcat pelts and parts under the CITES wildlife export program. This consultation is directly related to the Service's continued implementation of the CITES wildlife export program, as Section 7 of the ESA requires, and the EA discusses the interrelationship between the program and its effects on Canada lynx. Plf's Ex. 2 at 47-48. The final EA cites and includes the Biological Opinion and ITS. *Id*. at 66. The Service has yet to file an Administrative Record, and the record should include the documents underlying those interrelated decisions as well.

  2. <u>There is No Prejudice from Allowing the Revised Pleading</u>.

Among the factors to consider whether to allow supplementation or amendment, "prejudice to the opposing party . . . carries the greatest weight." *Eminence Capital, LLC*, 316 F.3d at 1052. "Unless undue prejudice to the opposing party will result, a trial judge should ordinarily permit a party to amend its complaint." *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973). The Service "bears the burden of showing prejudice." *DCD Programs, Ltd.*, 833 F.2d at 186-87.

Here, the Service cannot show prejudice stemming from the revised pleading. Guardians' comments on the draft EA put the Service squarely on notice of why Guardians believes the draft EA was insufficient, why an EIS should be prepared, and why the Biological Opinion and ITS are arbitrary and capricious. *See* Frost Decl., Ex. A & B. The Service considered and responded to those comments in the final EA. *See, e.g.*, Plf's Ex. 2 at 44-52 (responding re: EA deficiencies); 53-54 (responding re: Biological Opinion and ITS); 55-65 (responding re: EA deficiencies). There can be no prejudice to the Service when it was put on notice of alleged infirmities in its draft NEPA analysis, responded to them, and in some respects modified the language in the final EA in response. *See, e.g.*, *Oregon Natural Desert Assn. v. Bureau of Land Management*, 625 F.3d 1092, 1102 (9th Cir. 2010) (noting agency responses to comments on a draft NEPA analysis related to particular issues, and subsequent modifications to the final NEPA analysis).

    3.    <u>No Bad Faith or Futility Exists</u>.

Finally, neither of the two remaining factors – bad faith or futility – is present as to Guardians' request to revise its pleading.

Conclusion

The Court should grant Guardians leave to file its supplemental and amended complaint.

Date: June 30, 2017.        Respectfully submitted,

<u>/s/ Peter M.K. Frost</u>
Peter M.K. Frost
Sarah McMillan
Matthew K. Bishop

*Attorneys for Plaintiff*

Certificate of Compliance

Pursuant to L.R. 7.1(d)(2)(E), I hereby certify that this brief contains 1,775 words.

Date: June 30, 2017.	Respectfully submitted,

/s/ Peter M.K. Frost
Peter M.K. Frost