

FILED

FEB 2 2 2018

Clerk, U.S District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| WILDEARTH GUARDIANS, <br><br> Plaintiff, <br><br> and <br><br> CENTER FOR BIOLOGICAL DIVERSITY, <br><br> Consolidated-Plaintiff, <br><br> vs. <br><br> UNITED STATES FISH & WILDLIFE SERVICE; et al., <br><br> Defendants, <br><br> and <br><br> MONTANA TRAPPERS ASSOCIATION, NATIONAL TRAPPERS ASSOCIATION, AND FUR INFORMATION COUNCIL OF AMERICA, <br><br> Defendant-Intervenors. | Lead Case No. <br> CV 16-65-M-DWM <br><br> Member Case No. <br> CV 17-99-M-DWM <br><br><br> OPINION <br> and ORDER |

Plaintiffs WildEarth Guardians ("Guardians) and Center for Biological Diversity (the "Center") (collectively "Plaintiffs") are suing the United States Fish and Wildlife Service (the "Service") and its related entities (collectively referred to as "Federal Defendants") on the grounds that they failed to comply with environmental and regulatory procedures in the administration and implementation of a federal export program that allows certain animal pelts and parts to be exported from the United States pursuant to the Convention on International Trade in Endangered Species ("CITES"). The Montana Trappers Association, National Trappers Association, and the Fur Information Council of America (collectively "Defendant-Intervenors") intervened, and now seek to dismiss this action pursuant to Rules 12(b)(7) and 19 of the Federal Rules of Civil Procedure on the grounds that the Plaintiffs have not joined and cannot join as indispensable parties certain states and Native American tribes. (Doc. 75.) The Federal Defendants, (Doc. 79), and Plaintiffs, (Doc. 80), oppose the motion. Argument was heard on February 22, 2018. The motion is denied.

## BACKGROUND

CITES is a multilateral treaty that aims to protect wildlife by regulating trade in certain species that are vulnerable to, or adversely affected by, trade. 27 U.S.T. 1087 (March 3, 1973). The export of pelts and other parts of certain furbearing animals, including bobcats, Canada lynx, gray wolves, brown bears, and

2

river otters, is regulated under Appendix II of the Treaty. *Id.*; 50 C.F.R. § 23.91. A CITES export permit or certificate is therefore required for the export of pelts or other parts of those furbearing animals. The Service has promulgated regulations prohibiting the import or export of any CITES-listed animals unless expressly authorized by valid documents or specifically exempted from documentation requirements. *See* 50 C.F.R. pt. 23.

Pursuant to these regulations, anyone seeking to export pelts or parts of furbearing species listed in Appendix II must acquire tags and permits either directly from the Service's Division of Management Authority or from a state or tribe approved to distribute tags and/or permits. In the second instance, interested states and tribes can apply to the Division of Management Authority, and if approved, given tags and permits for distribution to trappers, hunters, or other individuals. In this process, a state or tribe must provide sufficient information for the Service to determine that its management program and harvest controls are appropriate to ensure that CITES furbearers harvested within its jurisdiction are legally acquired and that export will not be detrimental to the survival of the species in the wild. *See* 50 C.F.R. § 23.61. Approved states and tribes are given serially unique CITES export tags. (Doc. 62 at ¶ 20.) These states and tribes must, in turn, require that specimens of the species for which they have export program approval are tagged with these tags as evidence of legal acquisition. (*Id.*)

3

In 2016, Guardians filed this lawsuit, alleging that the Service's CITES export program is a major federal action that significantly affects the human environment and that the Service violated the National Environmental Policy Act ("NEPA") when it failed to prepare an Environmental Assessment ("EA") or Environmental Impact Statement ("EIS") in conjunction with the program. After the lawsuit was filed,[1] the case was stayed while the Service prepared an EA and issued a Finding of No Significant Impact, concluding that "continuing the CITES Export Program in its current form will not have a significant effect on the quality of the human environment under the meaning of [NEPA]." (FONSI, AR000073). During the public comment period, a number of states provided comments on the EA, including Wyoming, Wisconsin, North Carolina, and New Mexico. (*See* Docs. 76-3, 76-4, 76-5, 76-6.)

In July 2017, Guardians filed a Supplemental and Amended Complaint, alleging the CITES EA failed to adequately consider alternatives, disclose environmental impacts, analyze "bycatch" species, and analyze the environmental effects of the Canada lynx incidental take statement. (Doc. 62 at ¶¶ 47-53.) Guardians further alleges that an EIS should have been prepared, (*id.* at ¶ 54), and that the Canada lynx 2012 Biological Opinion and incidental take statement were arbitrary and capricious in violation of the Endangered Species Act ("ESA"), (*id.*

---

[1] The Service unsuccessfully moved to dismiss for lack of standing. (*See* Doc. 35.)

at ¶¶ 55-58). Also in July 2017, the Center filed a separate lawsuit challenging the CITES EA, alleging that the Service violated NEPA when it failed to adequately evaluate the effects of the CITES program, failed to provide a rational basis for the Finding of No Significant Impact, and failed to prepare an EIS. (*See* CV 17-99-M-DWM, Doc. 1). The two actions were consolidated. (Doc. 68.)

## ANALYSIS

Rule 19 of the Federal Rules of Civil Procedure sets "[t]he framework for determining whether a party is necessary and indispensable." *Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1022 (9th Cir. 2002). An examination under Rule 19 has two parts. A district court must first determine whether a party is "required" under Rule 19(a). "If the absent party is required and cannot be joined, the court must next determine whether the party is 'indispensable.'" *Kescoli v. Babbitt*, 101 F.3d 1304, 1309 (9th Cir. 1996). "The moving party has the burden of persuasion in arguing for dismissal. *Clinton v. Babbitt*, 180 F.3d 1081, 1088 (9th Cir. 1999). "Dismissal, however, is not the preferred outcome under the Rules." *Askew v. Sheriff of Cook Cty., Ill.*, 568 F.3d 632, 634 (7th Cir. 2009).

Defendant-Intervenors argue that the states and tribes that participate in the CITES program, (*see* Docs. 76-1, 76-2), are required and indispensable parties that cannot be joined due to their sovereign immunity, requiring dismissal. Defendant-Intervenors' attempt to turn the jurisdictional truth of the states' and tribes'

5

sovereign immunity to their advantage is unpersuasive. *See Diné Citizens Against Ruining Our Env't v. U.S. Office of Surface Mining Recl. & Enforc.*, 2013 WL 68701, at *2 (D. Colo. Jan. 4, 2013). "By th[eir] logic, virtually all public and private activity" affecting states and tribes "would be immune from any oversight under the government's environmental laws." *Id.* That is not the case.

Pursuant to Rule 19(a), a party whose joinder "will not deprive the court of subject matter jurisdiction" is required to be joined to the action if that person has a "legally protected interest" in the subject of the litigation which would be impaired or impeded if it was not party to the suit. Fed. R. Civ. P. 19(a)(1)(B)(i).[2] A "legally protected interest" "does not require a property right," *Am. Greyhound Racing, Inc.*, 305 F.3d at 1023, but must be "more than a financial stake and more than speculation about a future event," *Makah Indian Tribe v. Verity (Makah)*, 910 F.2d 555, 558 (9th Cir. 1990).

Defendant-Intervenors' primary obstacle here is that this is an administrative procedure case. Plaintiffs seek judicial review under the APA of the Service's compliance with NEPA and the ESA in its administration of a nation-wide export regime. (*See* Doc. 62 at ¶ 5; CV 17-99-M-DWM, Doc. 1 at ¶ 8.) "Generally, there is no legally protected interest in particular agency procedures." *Makah*, 910 F.2d

---

[2] Rule 19(a)(1)(A)'s concern that "in that person's absence, the court cannot accord complete relief among existing parties" is not implicated here.

at 558; *see Cachil Dehe Band of Wintun Indians of the Colusa Indian Comty. v. California*, 547 F.3d 962, 971 (9th Cir. 2008) ("[A]n absent party has no legally protected interest at stake in a suit merely to enforce compliance with administrative procedures."). In administrative procedure cases, absent states and tribes are not be prejudiced because everyone has "an equal interest in an administrative process that is lawful." *Makah*, 910 F.2d at 559; *see N. Alaska Envt'l Ctr. v. Hodel*, 803 F.2d 466, 469 (9th Cir. 1986) (noting that while all miners affected by a mining plan would be "interested," they did not have a "legal entitlement to any given set of procedures"). Essentially, any interest held by the states and tribes is coextensive with the interest held by the public at large.

Given the procedural nature of this case, Defendant-Intervenors clarified during argument that the states' and tribes' interest in this action is limited to the extent an injunction may result. Plaintiffs' counsel then stated that no such injunctive relief would be sought. The primary interest identified by Defendant-Intervenors is therefore no longer viable. And, insofar as Defendant-Intervenors rely on the states' and tribes' financial interest in trapping, such an interest is not sufficient under Rule 19(a). *Makah*, 910 F.2d at 558. Equally unpersuasive is the Defendant-Intervenors' insistence that states are solely tasked with wildlife management. *See Baldwin v. Fish & Game Comm'n of Mont.*, 436 U.S. 371, 386 (1978) ("[T]he State's control over wildlife is not exclusive and absolute in the

7

face of federal regulation and certain federally protected interests . . . .").[3] Pursuant to the ESA, the federal government has the authority to impose conditions on conservation, *see* 16 U.S.C. § 1539(a)(2)(B), and agencies have discretion in pursuing their conservation mandate, *see Pyramid Lake Paiute Tribe of Indians v. U.S. Dep't of Navy*, 898 F.2d 1410, 1418 (9th Cir. 1990). Accordingly, states and tribes do not satisfy the threshold for a legally protected interest under Rule 19(a).

Nor can Defendant-Intervenors show that the states and tribes are not adequately represented, the second consideration under Rule 19(a). "A non-party is adequately represented by existing parties if: (1) the interests of the existing parties are such that they would undoubtedly make all of the non-party's arguments; (2) the existing parties are capable of and willing to make such arguments; and (3) the non-party would offer no necessary element to the proceeding that existing parties would neglect." *Sw. Ctr. for Biological Diversity v. Babbitt*, 150 F.3d 1152, 1153-54 (9th Cir. 1998) (per curiam). Application of those factors shows the states' and tribes' interests are adequately represented.

First, the Federal Defendants share with the states and tribes an interest in defending the existing EA and Biological Opinion, as well as the current

---

[3] The complicated relationship between state and federal authorities in the area of wildlife management is the subject of extensive debate. *See* M. Nie et al., *Fish and Wildlife Management on Federal Lands: Debunking State Supremacy*, 47 Envtl. Law 797 (2017).

8

administration of the CITES program. The Federal Defendants have thus far defended the current program and have not presented any arguments that would undercut that position. Moreover, the states' and tribes' alleged interest in local wildlife management and an economically viable tagging regime is further represented by Defendant-Intervenors. While Defendant-Intervenors insist they cannot adequately represent the states and tribes, (Doc. 84 at 17), their intervention documents belie that assertion. (*See* Docs. 19, 20, 36, 37.)

Second, the Federal Defendants have stated their intention and ability to represent the states' and tribes' interests with respect to the federal administrative process at issue here. *See Sw. Ctr. for Biological Diversity*, 150 F.3d at 1154 ("The United States can adequately represent an Indian tribe unless there exists a conflict of interest between the United States and the tribe."). Defendant-Intervenors allude to a possible broad injunction that may put the Federal Defendants at odds with the states and tribes, *see Forest Conserv. Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1498-99 ) (9th Cir. 1995), but "identify no argument the United States would not or could not make on the[ir] behalf, and suggest no 'necessary element' the [states and tribes] alone could present," *Sw. Ctr. for Biological Diversity*, 150 F.3d at 1154. "To the contrary, because the federal government shares the[ir] strong interest in defeating [Plaintiffs'] ESA and NEPA claims and ensuring [the continued operation of the CITES program], the

government will be an effective representative of the [state's and tribe's] interests in the adjudication of [Plaintiffs'] ESA and NEPA claims." *Id.* Moreover, Plaintiffs have disavowed any intent to seek injunctive relief.

Finally, because the court's review of the EA and Biological Opinion are limited to the administrative record before the Service, *see Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010), the states and tribes "could not offer new evidence in the judicial proceeding that would materially affect the outcome of" the case, *Alto v. Black*, 738 F.3d 1111, 1128 (9th Cir. 2013).

Accordingly, the states and tribes are not required parties and therefore the Court need not address whether their sovereign immunity bars joinder or whether they are indispensable under Rule 19(b). *See Alto*, 738 F.3d at 1129.

## Conclusion

Because the states and tribes are not "required" under Rule 19(a), dismissal is not appropriate.[4] Accordingly, IT IS ORDERED that Defendant-Intervenors'

---

[4] While the states and tribes are not "required," assuming they are both "required" and "indispensable," the public rights exception applies. *Am. Greyhound Racing, Inc.*, 305 F.3d at 1025. For this exception to apply, "(1) 'the litigation must transcend the private interests of the litigants and seek to vindicate a public right' and (2) 'although the litigation may adversely affect the absent parties' interests, the litigation must not destroy the legal entitlements of absent parties.'" *White v. U. of Cal.*, 765 F.3d 1010, 1028 (9th Cir. 2014) (quoting *Kescoli*, 101 F.3d at 1311). While Defendant-Intervenors insist that Plaintiffs seek to further a private interest—a war on trapping—this is a procedural enforcement action implicating the public's right in sound environmental decisionmaking. This exception recognizes that the strict application of Rule 19 would sound the "death knell" for

10

motion (Doc. 75) is DENIED.

DATED this 22nd day of February, 2018.

_____
Donald W. Molloy, District Judge
United States District Court

---

judicial review of executive action with regional or national effect, since any absent party arguably affected by the rule and enjoying sovereign immunity could forestall that review simply by withholding consent for joinder. *Conner v. Burford*, 848 F.2d 1441, 1460 (9th Cir. 1988).

11